Filed 6/28/2017 Unmodified opinion attached

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GARY WAYNE SPERLING,<br><br>    Defendant and Appellant. | 2d Crim. No. B272275<br>(Super. Ct. No. 2015011290)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 8, 2017, and ordered published in the Official Reports, be modified as follows:

1. Footnote 1 at pages 1-2 is omitted in its entirety.

2. The last paragraph on page 6, beginning with, "When the trial court imposed," and ending with, "'No, your Honor.  Thank you,'" is deleted in its entirety.  The following new paragraph is inserted in its place:

Appellant did not object to the trial court's reasons for imposing the aggregate eight-year sentence.  Immediately after sentencing appellant, the court asked counsel, "Is there any other record either of you would like me to make?"  The prosecutor answered, "No."  Defense counsel remained silent.

3.  The second sentence in the second paragraph on page 7, beginning with, "In *People v. Scott* (1994) 9 Cal.4th 331, 353, our Supreme Court said:  'A party,' " is deleted and the following sentence is inserted in its place:

"In [*People v. Scott* (1994) 9 Cal.4th 331, 353, the] court . . . announced a new rule:  A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial.  [Citation.]

The remainder of the second paragraph on page 7 is unchanged.

4.  On page 8 after the first full paragraph ending with "fn. omitted.)," and before the heading, "*No Abuse of Discretion*," the following two new paragraphs are inserted:

Appellant argues that, because pertinent mitigating factors were set forth in his Defense Sentencing Statement, he was not required to object to the trial court's alleged failure to consider these mitigating factors at the time of sentencing.  He also argues that the Defense Sentencing Statement's request for probation or a low-term concurrent sentence preserved his right to claim on appeal that the trial court's stated reasons for imposing consecutive sentences were inadequate.  But appellant is complaining "about the manner in which the trial court exercise[d] its sentencing discretion and articulate[d] its supporting reasons . . . ." (*People v. Scott, supra*, 9 Cal.4th at p. 356.)  *Scott* held that such a complaint "cannot be raised for the first time on appeal." (*Ibid*.)  Thus, a defendant cannot remain mute while the trial court states its reasons for imposing a sentence and then on appeal claim that its statement of reasons was defective.  *Scott* explained:  "[C]ounsel is charged with

understanding, advocating, and clarifying permissible sentencing choices *at the hearing*. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Id*. at p. 353, italics added.) "[B]y encouraging counsel to intervene *at the time sentencing choices are made*, we hope to reduce the number of issues raised in the reviewing court in *any* form." (*Id*. at p. 356, fn. 18, first italics added, last italics in original.)

"[T]he *Scott* rule applies when the trial court 'clearly apprise[s]' the parties 'of the sentence the court intends to impose and the reasons that support any discretionary choices' [citation], and gives the parties a chance to seek 'clarification or change' [citation] by objecting to errors in the sentence. . . . [¶] It is only if the trial court fails to give the parties any meaningful opportunity to object that the *Scott* rule becomes inapplicable." (*People v. Gonzalez, supra*, 31 Cal.4th at p. 752.) Here, the trial court provided appellant a "meaningful opportunity to object." (*Ibid*.) After pronouncing sentence, the court asked, "Is there any other record either of you would like me to make?" The prosecutor replied. "No." Appellant's counsel remained silent. (See *People v. Boyce* (2014) 59 Cal.4th 672, 731 [defendant forfeited claim that trial court had given no reasons for imposing consecutive sentences because court "adjourned after asking counsel if there was anything else to discuss," and "[a]t no time did defense counsel lodge his objections to the imposition of consecutive sentences, or request a continuance"].)

3

5. Following the signatures on the majority opinion, the following concurring opinion shall be added:

"YEGAN, Acting P.J., Concurring:

"Wise adjudication has its own time for ripening." (*Maryland v. Baltimore Radio Show, Inc.* (1950) 338 U.S. 912, 918 [94 L.Ed. 562, 566].) We do not rule or opine that the instant appeal is frivolous. The appeal is easily affirmed by the application of long standing rules. But in my view, the appeal raises the hypothetical issue of the proper role of retained counsel in a criminal appeal. What should retained counsel in a criminal appeal do when he or she examines the record and determines that the appeal is not only without merit but that "no reasonable attorney could have thought it meritorious . . . ." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Such an appeal is "frivolous."

There is a statutory right to appeal and counsel is duty bound to represent his or her client. At the same time, counsel is an officer of the court and is duty bound not to maintain or continue a "frivolous" proceeding. The answer was suggested a quarter of a century ago by Justice Sims speaking for the Third District Court of Appeal: Privately retained counsel has the "possibility of securing the client's permission to dismiss the appeal, private counsel also may advise the client to obtain other counsel, or move to withdraw from the case. The paying client then may seek other counsel. 'By this method the rights of the client in securing counsel and the ethical obligations of a lawyer who thinks the appeal has no merit are balanced, and neither prejudices the other.' [Citation.]" (*People v. Placencia* (1992) 9 Cal.App.4th 422, 427.)

The *Wende* procedures available for appointed counsel are well known and need not be repeated. (*People v. Wende* (l979) 25 Cal.3d 436.) They do not apply to retained counsel. (*People v. Placencia, supra*, 9 Cal.App.4th at p. 428.) This does not mean that a defendant with financial resources to retain counsel has the right to maintain or continue a "frivolous" proceeding. "When retained counsel [in a criminal appeal] concludes that an appeal would be frivolous, he or she has a duty to advise the client that it would be a waste of money to prosecute the appeal and that it would be unethical for the lawyer to go forward with it." (*McCoy v. Court of Appeals of Wisconsin, Dist. 1* (l988) 486 U.S. 429, 437 [100 L.Ed.2d 440, 452].) "An attorney, whether appointed or paid, is . . . under an ethical obligation to refuse to prosecute a frivolous appeal." (*Id.* at p. 436, fn. omitted.)

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.


[There is no change in the judgment.]
CERTIFIED FOR PUBLICATION.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>GARY WAYNE SPERLING,<br><br>   Defendant and Appellant. | 2d Crim. No. B272275<br>(Super. Ct. No. 2015011290)<br>(Ventura County) |

In this extremely aggravated sexual assault case, appellant asks us to reverse discretionary sentencing choices. We will not do so. The rules on appeal concerning forfeiture and abuse of discretion compel affirmance. Appellant is fortunate that he was not sentenced to prison for the maximum 10-year term.[1]

---

[1] The appeal is frivolous. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) We may impose sanctions for a frivolous criminal appeal. (*People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 738, fn. 16.) We elect not to do so here. But counsel is warned that in the future we may impose sanctions where a criminal appeal is maintained despite an insurmountable procedural bar or contrary to long-standing

Gary Wayne Sperling appeals from the judgment entered after his guilty plea to sodomizing (count 1) and orally copulating (count 4) a victim who was incapable of giving consent because of a developmental disability. (Pen. Code, §§ 286, subd. (g), 288a, subd. (g).)[2] Both offenses were committed while appellant, a professional masseur, was supposed to be giving the victim a massage. Appellant contends that the trial court abused its discretion in sentencing him to prison for eight years. We affirm.

*Facts*

Appellant waived his right to a preliminary hearing. Our summary of the facts is based on the probation report, attachments to the report, and testimony at the sentencing hearing. In addition to the two counts to which appellant pleaded guilty, the information alleged three counts that were dismissed at the time of sentencing. The dismissed counts were one count of oral copulation and two counts of anal and genital penetration by a foreign object. In a document entitled "Felony Disposition Statement," appellant "agree[d] that all facts and information relating to any and all counts . . . which are dismissed by the court as part of this disposition may be included in the probation report and considered by the court in determining sentence." This is a "*Harvey* waiver." (*People v. Harvey* (1979) 25 Cal.3d 754; *People v. Munoz* (2007) 155 Cal.App.4th 160, 167.) Pursuant to the waiver, we include facts underlying the dismissed counts.

---

precedent precluding an appellate court from "second guessing" the lawful exercise of sentencing discretion.

[2] All statutory references are to the Penal Code.

Amanda, the victim, is chronologically 25 years old. She is developmentally delayed with an intelligence quotient (IQ) of about 50. "She is blonde and petite and looks and acts like a child." She suffers from Prader-Willi syndrome, a genetic disorder. Key features of the syndrome are mental retardation and an insatiable appetite. "People with this syndrome always feel hungry; no matter what they eat they are never full." Amanda "is on a strict diet of 850 calories per day."

As a reward for good behavior and "for following her diet restrictions," Amanda received a massage each Saturday. Appellant was the masseur. During the massage, "she was completely naked, but covered by a blanket."

After a massage on April 4, 2015, Amanda told a caregiver, "'[Appellant] showed me his penis and he stuck it inside me.'" She later told her mother that appellant "had touched her privates with his fingers, touched her 'boobs,' put his penis 'in her butt,' had her touch his penis with her hands, 'licked her butt,' and told her not to tell anyone about it." Amanda said "that there was inappropriate touching on previous visits."

During questioning by a deputy sheriff, Amanda reported her complaints: Appellant "put his hands on her breasts, kissed her on the mouth, and put his tongue inside her mouth. He also put his fingers on or inside her anus and may have also licked her anus in the past." At the end of the massage on April 4, 2015, Amanda "was on her right side when [appellant] asked, 'Does that feel good?' [S]he saw his penis around her buttocks and then realized his penis was inside her anus."

According to Amanda's mother, Amanda "explained . . . that [appellant] started off by touching her inappropriately and immediately offered sweets to her. The touching progressed to

3

the sexual acts and each time [appellant] would give her sweets such as donuts, snickers, and candy bars, which she had never tasted before." The mother said that Amanda "is very upset and frequently has nightmares about [appellant] breaking into the residence and abusing her again."

A medical examination disclosed lacerations on Amanda's anus, bruising three inches inside the rectum, "slight bleeding" inside the rectum, and bruising at the internal sphincter of the rectum.

During an interview at the Ventura County Probation Agency, appellant said, "'Something snapped, and it could have happened with any other woman.'" Appellant claimed that he "was influenced by the medication he was taking for his Parkinson['s] disease. A side effect of this medication, Carbidopa-Levodopa, is increased sexual urges. He was taking a high dose of the medication, which caused him to have more sexual impulses. Since this occurred, his dosage has been reduced." Appellant stated that "the victim is 'very smart and knew what she was doing.' [H]e believes that she was 'coached' on the things she said. He is remorseful for his actions and is sure this affected the victim mentally."

*Probation Officer's Recommendation*

The probation officer concluded: "[Appellant] is a danger as evidenced by his actions and the manner in which he carried them out. He clearly preyed on the victim because of her illness and carefully planned his abuse. He earned her trust and used sweets . . . to get her to comply with his sexual acts. . . . As a result, he is not deserving of any other sentence, but the maximum sentence of ten years in prison [i.e., the upper term of

4

eight years on count 1 plus a consecutive term of two years on count 4].”

*Defense Sentencing Statement*

Before the sentencing hearing, appellant filed a document entitled “Defense Sentencing Statement.” As exhibits to the statement, appellant attached two psychological reports. In the statement appellant argued that he should be granted probation. Appellant noted that he is 68 years old and “has lived a crime free life up until now.” Should the court not grant probation, appellant requested that it impose “low-term concurrent sentences, based on the following: (1) his good character and no criminal history, (2) the expert opinions and recommendations contained in the psychological assessments, and (3) the mitigating factors heavily outweighing any aggravating factors.”

*Sentencing Hearing*

At the sentencing hearing, appellant’s brother said that appellant has Parkinson’s disease and suffers from back pain. The brother described appellant as “an old man with a degenerat[ive] illness.” The brother continued, “I fear if he’s incarcerated, he will not live to return to society.” Defense counsel said that, “[s]ince his arrest, [appellant has] been undergoing treatment on his own.” Counsel asserted that two psychologists had found “that [he] lacks any significant risk of recidivism.” Appellant spoke and apologized to Amanda and her family.

The prosecutor asked that “[appellant] be given the benefit of his early plea and the fact that he waived prelim. [i.e., waived his right to a preliminary hearing].” The prosecutor

5

recommended an eight-year prison sentence:  the six-year middle term on count 1 plus a consecutive two-year term on count 4.

The trial court stated:  "I have considered aggravating and mitigating circumstances, [and] find that the mitigating circumstances and the aggravating circumstances . . . essentially balance each other, and I am accepting the People's representation that the midterm [of six years] is [the] appropriate term on Count 1 [sodomy]."  As to count 4 (oral copulation), the court reasoned that a two-year consecutive sentence is appropriate because the offenses "were significantly different sexual acts, and there was significant movement of the victim over a course or period of time, which allowed the defendant an opportunity to reflect on his conduct and stop, but he didn't."[3]

When the trial court imposed the aggregate eight-year sentence, appellant did not object.  The court asked defense counsel, "Is there any other record . . . you would like me to make?"  Counsel answered, "No, your Honor.  Thank you."

---

[3] A superior court judge sits as trier of fact at the probation and sentencing hearing and, therefore, must have the power to resolve contested facts relevant to the selection of an appropriate and just disposition of the case.  (See *People v. Peterson* (1973) 9 Cal.3d 717, 728, 730.)  Here the trial court impliedly rejected, i.e. did not credit, appellant's claim that his commission of the crimes was "influenced by the medication he was taking for his Parkinson['s] disease."  "We cannot substitute our judgment for that of the trial court on issues of credibility.  [Citation.]" (*People v. Markley* (2006) 138 Cal.App.4th 230, 242.)

6

*Forfeiture of Sentencing Claims*

Appellant claims that the trial court abused its discretion in sentencing him to the six-year middle term on count 1 because it failed to consider several mitigating factors and "erroneously considered as aggravating factors facts that were elements of the offense itself." Rule 4.420(d) of the California Rules of Court prohibits such a dual use of facts: "A fact that is an element of the crime upon which punishment is being imposed may not be used to impose a greater term."[4] Appellant also claims that the trial court abused its discretion in imposing a two-year consecutive sentence on count 4 because "[n]one of the [statutory] factors pertaining specifically to the imposing of concurrent or consecutive sentences supported the imposition of consecutive sentences."

Appellant forfeited his sentencing claims because he did not object at the time of sentencing. In *People v. Scott* (1994) 9 Cal.4th 331, 353, our Supreme Court said: "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial. [Citation.] The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons' [citation], but the rule does not apply when the sentence is legally unauthorized [citation]." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751; see *People v. Kelley* (1997) 52 Cal.App.4th 568,

---

[4] All further references to rules are to the California Rules of Court.

581-582 [*Scott* forfeiture doctrine applies where defendant complains for first time on appeal that trial court failed to consider relevant mitigating factors]; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 90-91 [because defendant failed to object at sentencing, he was precluded from contending that trial court had relied on an element of the offense to impose the upper term]; *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1372, fn. 6 ["To the extent Ortiz . . . argues the trial court erred by making the three-year term *consecutive* to his life term, . . . he waived any error by not timely and specifically objecting to that purported error"].)

"The reason for [the forfeiture] rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' [Citation.]" (*People v. French* (2008) 43 Cal.4th 36, 46.) "Had [appellant] timely and specifically objected below, the trial court presumably would have had an opportunity to correct, and could have corrected, any error. [Citation.]" (*People v. Ortiz, supra*, 208 Cal.App.4th at p. 1372, fn. omitted.)

*No Abuse of Discretion*

Even if appellant had timely and specifically objected below, the trial court would not have abused its discretion in imposing the six-year middle term on count 1 and imposing consecutive sentences. "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377; see also *People v. Surplice* (1962) 203

Cal.App.2d 784, 791; *In re Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1450.)

Imposition of Middle Term

Appellant claims that the trial court failed to consider relevant mitigating factors. "The court is presumed to have considered all relevant factors unless the record affirmatively shows the contrary. [Citations.]" (*People v. Kelley*, *supra*, 52 Cal.App.4th at p. 582.) No contrary showing has been made here. The mitigating factors that the trial court allegedly failed to consider were set forth in the Defense Sentencing Statement and the probation report. At the sentencing hearing, the trial court declared that it had "read and considered" the probation report "with all attachments and letters." It had also "read and considered the [D]efense [S]entencing [S]tatement." In addition, it had "considered aggravating and mitigating circumstances."

Appellant contends that, as an aggravating factor, the trial court erroneously considered that Amanda was particularly vulnerable as a result of a disability. (See Rule 4.421, subd. (a)(3) ["[c]ircumstances in aggravation" include the factor that the "victim was particularly vulnerable"].) Appellant argues that this was an impermissible dual use of facts because "section 288[a], subdivision (g) [*sic*, the middle term was imposed for sodomy in violation of section 286, subdivision (g)] *only* applies when the victim is particularly vulnerable as a result of a disability." We disagree. The statute says that the victim must be "incapable" of giving legal consent "because of a mental disorder or developmental or physical disability." (§ 286, subd. (g).) The statute does not require that the victim be particularly vulnerable.

9

Furthermore, Amanda was not particularly vulnerable only because of her mental disability. She was also particularly vulnerable because she was petite, she was naked under a blanket, and appellant knew that she craved forbidden sweets. Appellant took advantage of this craving to victimize her. He would touch her inappropriately and offer her sweets as a reward for tolerating his behavior. The trial court referred to appellant's "grooming" of Amanda, "i.e., patiently cultivating and manipulating [her] to achieve his purposes." (*People v. Shazier* (2014) 60 Cal.4th 109, 145.)

Finally, Amanda was particularly vulnerable because appellant occupied a position of trust or confidence as her professional masseur. (See Rule 4.421, subd. (a)(11) ["[c]ircumstances in aggravation" include the factor that "defendant took advantage of a position of trust or confidence"].) Amanda trustfully allowed appellant to rub and manipulate her body in the expectation that he would comply with the rules of his profession.

The trial court would have acted within its discretion if, based on any aspect of Amanda's particular vulnerability, it had imposed the eight-year upper term instead of the six-year middle term. "One aggravating factor is sufficient to support the imposition of an upper term. [Citations.]" (*People v. Ortiz*, *supra*, 208 Cal.App.4th at p. 1371.)

Appellant claims that the trial court committed a dual-use-of-facts violation when it "noted that [appellant] inflicted physical and emotional harm" upon Amanda. The claim is without merit because the physical and emotional harm she suffered is not "an element" of a violation of section 286, subdivision (g). (Rule 4.420(d).)

10

Consecutive Term

A trial court is required to state its reasons for imposing consecutive sentences. (Rule 4.406(b)(5).) The trial court here concluded that consecutive sentences were warranted because the act of sodomy (count 1) and the act of oral copulation (count 4) "were significantly different sexual acts, and there was significant movement of the victim over a course or period of time, which allowed the defendant an opportunity to reflect on his conduct and stop, but he didn't."

"'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.'" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) In his opening brief appellant asserts, "As the crimes and their objectives were *not* predominantly independent of each other, as the crimes did *not* involve separate acts of violence or threats of violence, and as the crimes were *not* committed at different times or separate places, the trial court abused its discretion in imposing consecutive sentences." "This bare, unsubstantiated [and conclusionary] assertion does not . . . satisfy [appellant's] burden on appeal." (*People v. King* (2010) 183 Cal.App.4th 1281, 1323.)

In his reply brief appellant argues, "The trial court's mere statement that there was an opportunity to reflect on the conduct [and stop] . . . is insufficient to support consecutive sentences without further analysis." In support of his argument, appellant cites *People v. Irvin* (1996) 43 Cal.App.4th 1063, 1069-1070. *Irvin* is inapplicable because it involved the mandatory imposition of full consecutive terms pursuant to section 667.6, subdivision (d), which provides, "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in

11

subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions." The appellate court concluded that the trial court's statement of reasons "does not provide a sufficient analysis of the facts to allow this court to determine why it concluded all 20 sex offense acts must have occurred on 'separate occasions' within the meaning of subdivision (d)." (*People v. Irvin, supra,* at p. 1070.)

Even if the trial court here had stated improper reasons for imposing consecutive sentences, the error would have been harmless. "In order to determine whether error by the trial court in relying upon improper factors in aggravation [or in imposing consecutive sentences] requires remanding for resentencing[,] 'the reviewing court must determine if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." [Citation.]' [Citation.]" (*People v. Avalos* (1984) 37 Cal.3d 216, 233; accord, *People v. Scott,* supra, 9 Cal.4th at p. 355 [when trial court "errs in identifying or articulating its sentencing choices, the reviewing court has no choice but to remand the matter for resentencing unless it finds the error nonprejudicial"].)

The trial court imposed the middle term - not the upper term - on count 1. Thus, in determining whether to impose consecutive sentences, the trial court could have considered the same aggravating factors it had considered in deciding to impose the middle term. (See Rule 4.425(b)(1) [in deciding whether to impose consecutive sentences, court may consider any circumstance in aggravation except "[a] fact used to impose the upper term"].) The aggravating factors were: (1) The victim was "particularly vulnerable." (2) Appellant "took advantage of her disability. He groomed her." (3) Appellant "inflicted physical and

12

emotional harm on the victim."  (4) Appellant "doesn't appear to be remorseful.  He doesn't admit the entirety of the conduct.  He's minimizing."  In view of these aggravating factors and the probation officer's recommendation that appellant receive the 10-year maximum sentence, it is not reasonably probable that the trial court would have imposed concurrent instead of consecutive terms.  (See *People v. Smith* (1984) 155 Cal.App.3d 539, 546 ["because adequate reasons for imposing full consecutive sentences on counts V and VI existed in abundance, the error in failing to state those reasons does not require a remand for resentencing"]; *People v. King, supra,* 183 Cal.App.4th at p. 1323 ["Only one criterion is necessary to impose a consecutive sentence"].)

<em>Conclusion</em>

"Special needs" victims such as Amanda require extra protection from those entrusted with their care.  The law takes a dim view of a masseur who does the opposite and takes sexual advantage of a disabled person.  The experienced trial court imposed an eight-year prison term.  This discretionary sentence choice is reasonable under the circumstances.  There is no abuse of discretion or miscarriage of justice.

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.

We concur:


PERREN, J.

TANGEMAN, J.

13

Nancy Ayers, Judge

Superior Court County of Ventura

_____

Eisner Gorin, Alan Eisner and Dmitry Gorin for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill, David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.