Filed 9/9/24  P. v. Brewer CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY RAY BREWER,<br><br>Defendant and Appellant. | F085958<br><br>(Super. Ct. No. 22CMS-3409)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Robert F. Kane, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Smith, Acting P. J., Meehan, J. and Snauffer, J.

A jury found defendant Anthony Ray Brewer guilty of making criminal threats but acquitted him of brandishing a firearm. The jury found not true the allegation that defendant used a firearm during the commission of the crime of conviction. The trial court found true the allegations that defendant suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d))[1] and a prior serious felony conviction (§ 667, subd. (a)(1)). At sentencing, the court struck defendant's prior strike conviction. The court refused, and defendant did not request, dismissal of the enhancement for defendant's prior serious felony conviction. The court sentenced defendant to an aggregate term of seven years. Absent a request for an ability-to-pay hearing, the court further imposed a minimum restitution fine (§ 1202.4, subd. (b)) and court fees.

Defendant argues on appeal: (1) the jury's conviction for making criminal threats is irrational because the jury found defendant did not possess a firearm, (2) the trial court erred by refusing to dismiss the section 667, subdivision (a) prior felony conviction enhancement, and (3) the restitution fine and court fees were improperly imposed without an ability-to-pay hearing. We affirm.

**PROCEDURAL BACKGROUND**

On January 20, 2023, the Kings County District Attorney filed an amended information alleging defendant made criminal threats by threatening to assault Jessica G. (§ 422, subd. (a); count 1) and unlawfully exhibited a firearm in her presence in a rude, angry, and threatening manner, a misdemeanor (§ 417, subd. (a)(2)(B); count 2). It further alleged, as to count 1, defendant was armed with a firearm in the commission of the offense (§ 12022, subd. (a)(1)), and he suffered two prior strike convictions (pled in the alternative) within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i),

---

[1]     Undesignated statutory references are to the Penal Code.

2.

1170.12, subds. (a)–(d)) which also qualified as prior serious felony convictions (§ 667, subd. (a)(1)). It alleged no aggravating factors.

The jury found defendant guilty on count 1, but not guilty on count 2. The jury found the firearm allegation not true. In a bifurcated proceeding, the trial court found the prior conviction allegations true.

At the March 9, 2023 sentencing hearing, the trial court granted defendant's request to strike his prior strike convictions[2] for purposes of the Three Strikes law under *Romero*.[3] The court refused, and defense counsel did not request, dismissal of the prior serious felony conviction enhancement. (§ 667, subd. (a)(1).) The court sentenced defendant to an aggregate determinate term of seven years: the middle term of two years on count 1 plus five years for the prior serious felony conviction enhancement. Defendant did not request an ability-to-pay hearing and the trial court imposed the mandatory minimum restitution fine of $300 (§ 1202.4, subd. (b)), a $30 court facilities fee (Gov. Code, § 70373), and a $40 court operations fee. (§ 1465.8.)

On March 20, 2023, defendant filed a notice of appeal.

## FACTUAL BACKGROUND

Jessica once shared an apartment with defendant, who she had known for 15 to 20 years, and S.F. After she moved out, on the night of August 19, 2022, she decided to retrieve a vehicle she believed she acquired from S.F. that was parked at this apartment complex (the vehicle). With the "pink slip" and registration for the vehicle, but not the keys, she broke into the vehicle, unlocked the doors, and called for a tow truck.

While waiting for the tow truck, defendant arrived in his sedan. He approached Jessica on foot, angrily yelled at her to get away from the vehicle, and, when he was

---

[2] Though the trial court technically struck both convictions, it decided to treat the two felonies as a "single felony" because they arose from the same incident and appeared to be charged in the alternative.

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

3.

about three-to-four feet away, attempted to hit her. Jessica retreated inside the vehicle through the driver's door and locked it. Defendant angrily "bang[ed] on" the driver door to the vehicle for about three minutes and yelled, "b[*]tch, I am going to shoot you." Jessica was scared, believing his threat. She called emergency services. When neighbors began to respond to the commotion, defendant got back into his sedan and drove off.

Defendant returned in his sedan about 15 minutes later. Jessica had exited the vehicle to check for damage and was standing outside the vehicle. She heard children yelling nearby and saw defendant running at her. When defendant was about 11 to 13 feet away, she believed he pulled something from his waistband, and she retreated into the vehicle. She called emergency services again while defendant banged on the window with what she believed to be a handgun and pointed it at her while she was in the vehicle. He yelled that he was going to shoot her, which made Jessica scared that defendant would follow through with his threat. When neighbors again emerged due to the commotion, defendant fled.

Two children claimed to witness these events. Each knew defendant and was playing outside at the apartment complex at the time of the incident. One child witnessed defendant arrive during the first altercation. He told police he saw defendant try to strike Jessica and heard him threaten to kill her if she did not leave the vehicle. He then saw defendant drive away. He saw defendant return about 10 to 15 minutes later and heard him yell at Jessica to get away from the vehicle because "it was his." He saw defendant holding a "shiny" object he believed to be a firearm. However, he admitted at trial that when he reported these things to police on August 19, 2022, he only reported what others told him.

The other child witnessed defendant arrive during the second altercation. He saw defendant with his hand behind his back as he approached Jessica's vehicle, but he did not know whether defendant was holding a firearm. At trial, he admitted that he lied about various statements he made to the police on August 19, 2022.

4.

City of Hanford Police Officer Ernest Escalera arrived at the scene to a crowd surrounding the vehicle. Escalera interviewed a child who knew defendant who stated he saw defendant with his left hand behind his back holding a firearm. The child reported that he heard defendant yell at Jessica and saw him pound on the driver's side door. Witnesses who knew defendant informed Escalera of defendant's likely location. Escalera and defendant eventually arranged a meeting.

At the meeting, defendant denied possessing a firearm, but he acknowledged he had a cell phone that could be mistaken for a firearm. Defendant admitted that he was at the scene but denied Jessica's version of events. He thought Jessica was stealing the vehicle, and he told her to get out of the vehicle before he left. Officers did not locate a firearm.

## DISCUSSION

### I. Section 422 Conviction Affirmed

Defendant contends the jury's finding that defendant did not possess a firearm collaterally estops the count 1 conviction for making criminal threats. We disagree.

Collateral estoppel does not apply to differing factual findings in the *same* proceeding. (*People v. Cooper* (2007) 149 Cal.App.4th 500, 518 [collateral estoppel applies when a factual issue which is identical to an issue in the current case was litigated and necessarily determined in a prior final adjudication].) Given no prior adjudication on this issue exists, collateral estoppel does not apply. We interpret defendant's argument as instead challenging the rationality of the jury's finding that defendant made criminal threats against Jessica while unarmed.

Purportedly inconsistent verdicts may stand if supported by substantial evidence. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405.) This rule applies equally to an enhancement finding inconsistent with a verdict on a substantive offense. (*Ibid*.) "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*People v. Lewis* (2001) 25 Cal.4th 610, 656.)

We evaluate the sufficiency of the evidence by "consider[ing] the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment.  The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt."  (*People v. Mincey* (1992) 2 Cal.4th 408, 432, fn. omitted.)  "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' "  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  "[W]e do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses."  (*People v. Cortes* (1999) 71 Cal.App.4th 62, 71.)

A criminal threat occurs when (1) a defendant "willfully threatens to commit a crime which will result in death or great bodily injury to another person," (2) the defendant specifically intends "that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out," (3) the threat is facially and "under the circumstances … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) the threat causes the threatened person "to be in a sustained fear for his or her own safety," (§ 422) and (5) the threatened person's fear is " 'reasonabl[e]' under the circumstances."  (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

Defendant queries:  "[H]ow did [defendant] put [Jessica] in circumstances where it was reasonable for her to have a sustained fear for her own safety if he was not armed?"  But defendant provides no authority, nor can we find any, stating that a criminal threat made without a weapon is incapable of conveying the "gravity of purpose" and inciting the reasonable fear required to establish a criminal threat.  (§ 422.)

Rather, section 422's list of qualities—unequivocality, unconditionality, immediacy, specificity—" 'are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances….' "  (*People v. Bolin*, *supra*, 18 Cal.4th at

p. 340.)  "The totality of the circumstances must be considered in addition to the words used."  (*People v. Smith* (2009) 178 Cal.App.4th 475, 480.)  We may consider the manner of the threat's communication and the defendant's subsequent conduct.  (*In re George T.* (2004) 33 Cal.4th 620, 635; *People v. Butler* (2000) 85 Cal.App.4th 745, 754.)

A rational jury could conclude that, in these circumstances, a firearm was not required to establish a criminal threat.  The jury could conclude that defendant's conduct during the first altercation, i.e., attempting to hit Jessica before chasing her into the vehicle and threatening her life while beating on the vehicle for approximately three minutes, was sufficient to cause Jessica to reasonably fear for her safety, even absent a firearm and without considering the second altercation.

As to the second altercation, the jury could rationally conclude that, even if no firearm was present, it was reasonable for Jessica to believe that defendant returned with a firearm, even if it was, as defendant suggested in his police interview, a cell phone.  Given it was night, defendant already threatened to shoot her, and he was holding an object, Jessica could reasonably perceive defendant as holding a firearm.  Thus, under the circumstances, a rational jury could conclude that Jessica's *perception* of a firearm was reasonable and caused by defendant's threatening conduct, even if the jury rejected the presence of a firearm *in fact*.

We conclude sufficient evidence supports the jury's verdict on count 1, and the verdict is consistent with the finding that there was no firearm.

## II.     Five-Year Enhancement

### A.     Additional Background

At sentencing, the court granted defendant's *Romero* motion to dismiss his prior strike "[b]ased upon the fact that the prior is 21 years old and he went probably 11, 12 years after being paroled on that offense without any new offenses, and the current crime is nonviolent[,] the Court is going to exercise its discretion under … Section 1385 … to strike the prior as it exists under [sections 1170.12, subdivisions (a)–(d) and 667,

7.

subdivisions (b)–(i)].  That does not strike the [section 667, subdivision (a)] prior …
which is the five-year prior for a previous serious felony.  And I don't believe the Court
has the authority to strike that prior, being that if I did, I would not strike that prior based
upon it doesn't appear it would be in the interest of justice to do so considering the fact
that the prior did involve infliction of great bodily injury.  And I think justice is served by
getting rid of the strike aspect of it, but not ignoring it entirely.  The fact there was a
violent act in his past that caused somebody to suffer great bodily injury and he was
threatening to do the same thing in the current offense and the [section 667,
subdivision (a)] prior was not stricken."

Defense counsel did not request dismissal of the enhancement in his *Romero*
motion or object to the trial court's ruling at the sentencing hearing.

**B.     Analysis**

Defendant argues the trial court had to strike the enhancement for a prior serious
felony (§ 667, subd. (a)) when it struck his prior conviction under the Three Strikes law,
and in the alternative, the court abused its discretion in refusing to dismiss the
enhancement under section 1385.  We disagree on both accounts.

First, striking a prior strike under the Three Strikes law does not prevent the trial
court from considering it in connection with the same proceeding.  (*Romero*, *supra*, 13
Cal.4th at p. 508; *People v. Garcia* (1999) 20 Cal.4th 490, 499 ["[I]n a Three Strikes case
… when a court has struck a prior conviction allegation, it has not 'wipe[d] out' that
conviction as though the defendant had never suffered it …, and a court may consider it
when sentencing the defendant for other convictions, including others in the same
proceeding."].)  Thus, it was not necessarily improper, but fell within the court's
sentencing discretion, to strike defendant's prior strike but not dismiss the section 667,
subdivision (a) enhancement.

Second, defendant bore the burden to request the enhancement's dismissal.
(*People v. Carmony* (2004) 33 Cal.4th 367, 375–376 ["[A]ny failure on the part of a

defendant to invite the court to dismiss under section 1385 … waives or forfeits his or her right to raise the issue on appeal."].)  He made no such request.

His *Romero* motion's bare reference to section 1385 did not constitute a request to dismiss the enhancement.  Section 1385 applies both to dismissals of prior strikes (see *Romero*, *supra*, 13 Cal.4th at p. 504 [applying section 1385 to dismissal of strikes]) and to enhancements (§ 1385, subd. (c)(1)).  By his request to dismiss the prior strike, defendant did not inform the trial court of the specific relief he now requests on appeal.  The motion did not engage in the analysis of the section 1385, subdivision (c)(2) mitigating factors relevant to dismissal of enhancements.  Defense counsel neither requested the enhancement's dismissal at sentencing nor objected to, or otherwise sought clarification of, the court's unprovoked comments regarding dismissal of the enhancement.  We conclude defendant forfeited any objection to the court's decision to impose the enhancement.  (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100 [defendant must object to the sentence below to preserve an issue for appeal].)

Thus, defendant cannot challenge the trial court's sentencing discretion regarding the section 667, subdivision (a) enhancement for the first time on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 351–354 [defendant cannot challenge trial court's sentencing choice for the first time on appeal because "defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention" at the time of sentencing].)

Though we understand defendant's concerns about the trial court's mistaken belief that it lacked discretion to dismiss the enhancement, and the dearth of any analysis of the relevant, applicable mitigating factors[4] reflecting the court's understanding that it was required to place "great weight" on those mitigating factors in favor of dismissing the

---

[4]    Applicable here, the current offense was not a violent felony under section 667.5, subdivision (c) and the prior conviction was over five years old (in fact 21 years old). (§ 1385, subd. (c)(2)(F), (H).)

enhancement (§ 1385, subd. (c)(2)), the absence of an objection to, or request to clarify, the court's rationale precludes our ability to analyze the court's reasoning. (*People v. Benevides* (1998) 64 Cal.App.4th 728, 735, overruled on other grounds in *People v. Carmony*, *supra*, 33 Cal.4th at p. 375.)

For this reason, defendant's reliance at oral argument on our Supreme Court's recent decision in *People v. Walker* (Aug. 15, 2024, S278309) ___ Cal.5th ___ [2024 Cal. LEXIS 4426] is inapplicable. *Walker* clarified that, under section 1385, subdivision (c), "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Walker*, [p. 3].)

But absent an objection or request for clarification by defendant, we do not know the *full* rationale behind the trial court's decision. For example, we do not know if the court would conclude that dismissal would endanger public safety given the violent nature of the prior felony and the fact that the present conviction involved a threat of violence. Because the court was not required to state its reasons on the record (§ 1385, subd. (a) [only *dismissal* requires reasons stated on the record]), we cannot determine if the court failed to afford great weight to the mitigating circumstances consistent with *Walker*.

We conclude that the trial court's refusal to dismiss the enhancement when it struck the prior strike was not erroneous as a matter of law. Defendant forfeited any objection to the court's decision. We affirm the sentence.

## III.    Fines and Fees

Defendant argues that the trial court erroneously imposed a mandatory minimum restitution fine of $300 (§ 1202.4, subd. (b)), a $30 court facilities fee (Gov. Code, § 70373), and a $40 court operations fee (§ 1465.8) without an ability-to-pay hearing. Defendant forfeited any argument that the fines and fees were improperly imposed without an ability-to-pay hearing (see *People v. Dueñas* (2019) 30 Cal.App.5th 1157) by

10.

failing to object or to request an ability-to-pay hearing below. (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624) ["a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal"].) This is particularly true given the sentencing occurred after *Dueñas* declared a constitutional right to have courts determine ability to pay prior to imposing mandatory fines and fees. (*Greeley*, at p. 624.) We conclude defendant forfeited his challenge to the fines and fees imposed in this case.

## **DISPOSITION**

The judgment is affirmed.